UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NICKESHA THOMAS AND CINDY VAZQUEZ,
 individually and on behalf of others similarly situated,

Civil Action No.
20-cv-03584

Plaintiffs,

v.

MERCY COLLEGE,

Defendant.

**<u>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS WITH
PREJUDICE PURSUANT TO RULE 12(c) OF THE FEDERAL RULES OF CIVIL
PROCEDURE</u>**

BOND SCHOENECK & KING, PLLC
600 Third Avenue, 22nd Floor
New York, NY 10016
(646) 253-2330

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND .............................................................................................................. 3

ARGUMENT  STANDARD FOR RULE 12(c) DISMISSAL ...................................................... 6

    POINT I
    PLAINTIFFS' BREACH OF CONTRACT CLAIMS MUST BE DISMISSED.............. 7

    A. Plaintiffs' Tuition Claim Must Be Dismissed Because It Fails For Lack of A Specific
       Contractual Promise..................................................................................................... 7

    B. Plaintiffs' Tuition Claim Must Be Dismissed Because New York Courts Do Not
       Recognize Claims for "Educational Malpractice" ...................................................... 14

    C. Plaintiff's Tuition Claim Must Be Dismissed Pursuant to the Terms of the MERCY's
       Policies...................................................................................................................... 17

    POINT II
    PLAINTIFFS' UNJUST ENRICHMENT CLAIM MUST BE DISMISSED.................. 17

    POINT III
    PLAINTIFFS' CONVERSION CLAIM MUST BE DISMISSED ................................. 19

    POINT IV
    PLAINTIFFS' MONEY HAD AND RECEIVED CLAIM MUST BE DISMISSED..... 20

CONCLUSION............................................................................................................... 23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*André v. Pace Univ.*,
   170 Misc. 2d 893 (2d Dept. 1996) ........................................................................................16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...............................................................................................................6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...............................................................................................................6

*Bianco v. Bianco*,
   36 A.D.3d 490 (1st Dept. 2007) ..........................................................................................11

*Carr v. St. John's Univ.*,
   17 A.D.2d 632 (2d Dept. 1962), *aff'd on opinion below*, 12 N.Y.2d 802 (1962) .....................9

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002) ...................................................................................................5

*Charles Ramsey Co. v Fabtech-NY LLC*,
   2020 U.S. Dist. LEXIS 9348 (N.D.N.Y. Jan. 21, 2020) ........................................................22

*Cheves v. Trustees of Columbia Univ.*,
   89 A.D.3d 463 (1st Dept. 2011) ....................................................................................13, 14

*Chung v Sano*,
   2011 U.S. Dist. LEXIS 34989 (E.D.N.Y. Mar. 31, 2011) ......................................................20

*Citadel Mgmt., Inc. v. Telesis Tr., Inc.*,
   123 F. Supp. 2d 133 (S.D.N.Y. 2000) ..................................................................................19

*DiFolco v. MSNBC Cable LLC*,
   622 F.3d 104 (2d Cir. 2010) ...................................................................................................7

*Erickson v. Pardus*,
   551 U.S. 89 (2007) .................................................................................................................6

*Faiaz v. Colgate Univ.*,
   64 F. Supp. 3d 336 (N.D.N.Y. 2014) ..............................................................................11, 13

*Fesseha v. TD Waterhouse Inv. Servs., Inc.*,
   305 A.D.2d 268 (1st Dept 2003) ..........................................................................................19

*Fischer v Graham*,
   2016 U.S. Dist. LEXIS 72749 (S.D.N.Y. June 3, 2016) ........................................................22

ii

*Gally v. Columbia Univ.*,
    22 F. Supp. 2d 199 (S.D.N.Y. 1998).................................................................. *passim*

*Global View Ltd. Venture Capital v. Great Cent. Basin Exploration, L.L.C.*,
    288 F. Supp. 2d 473 (S.D.N.Y. 2003)..................................................................20

*Habitzreuther v. Cornell Univ.*,
    5:14-cv-1229, 2015 U.S. Dist. LEXIS 112209 (N.D.N.Y. Aug. 25, 2015).......................8, 16

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*,
    62 F.3d 69 (2d Cir. 1995)..............................................................................6, 7

*Jeffers v. American Univ. of Antigua*,
    125 A.D.3d 440 (1st Dept. 2015).....................................................................18, 19

*Jones v. Trustees of Union Coll.*,
    92 A.D.3d 997 (3d Dept. 2012) .........................................................................11

*Kaye v. Grossman*,
    202 F.3d 611 (2d Cir. 2000)..............................................................................18

*Keefe v. New York Law Sch.*,
    71 A.D.3d 569 (1st Dept. 2010) ........................................................................10

*Knelman v. Middlebury Coll.*,
    898 F. Supp. 2d 697 (D. Vt. 2012).....................................................................13

*Litvinoff v Wright*,
    150 A.D.3d 714 (2d Dept 2017) .......................................................................21

*Lloyd v. Alpha Phi Alpha Frat.*,
    96-cv-348, 1999 U.S. Dist. Lexis 906 (N.D.N.Y Jan. 26, 1999)............................................11

*Maas v. Cornell University*,
    94 N.Y.2d 87 (1999) ....................................................................................10

*Maggette v. Dalsheim*,
    709 F.2d 800 (2d Cir. 1983)..............................................................................6

*Matzan v. Eastman Kodak Co.*,
    134 A.D.2d 863 (4th Dept 1987) ....................................................................19, 20

*Nat'l Westminster Bank PLC v. Grant Prideco, Inc.*,
    261 F. Supp.2d 265 (S.D.N.Y. 2003)...................................................................21

*Olsson v. Bd. of Higher Educ.*,
    49 N.Y.2d 408 (1980) ..................................................................................15

iii

*Paladino v. Adelphi Univ.*,
89 A.D.2d 85 (2d Dept. 1982) ............................................................. 16

*Panix Promotions, Ltd. v. Lewis*,
No. 01-Civ-2709, 2002 U.S.Dist. LEXIS 7176 (S.D.N.Y. Jan. 22, 2002) ....................... 21, 22

*Papelino v. Albany College of Pharmacy*,
633 F.3d 81 (2d Cir. 2011) ........................................................... 3, 10, 14

*Parsa v. State*,
64 N.Y.2d 143 (1984) ..................................................................... 21

*Paynter v. New York Univ.*,
66 Misc. 2d 92 (1st Dept. 1971) ........................................................... 13

*Prasad v. Cornell Univ.*,
5:15-cv-322, 2016 U.S. Dist. LEXIS 161297 (N.D.N.Y. Feb. 24, 2016) .............................. 11

*Richter v. Catholic University of America*,
No. 18-00583, 2019 U.S. Dist. LEXIS 20150 (D.D.C. Feb. 5, 2019) ................................... 11

*Roberts v. Babkiewicz*,
582 F.3d 418 (2d Cir. 2009) ................................................................. 6

*Rolph v. Hobart & William Smith Colls.*,
271 F. Supp. 3d 386 (W.D.N.Y. 2017) ....................................................... 13

*Shafferman v. Queens Borough Pub. Lib. (In re JMK Constr. Group, Ltd.)*,
502 BR 396 (Bankr S.D.N.Y. 2013) ......................................................... 20

*Tedeschi v. Wagner College*,
49 N.Y.2d 652 (1980) ................................................................ 3, 9, 10

*Thyroff v. Nationwide Mut. Ins. Co.*,
8 N.Y.3d 283 (2007) ....................................................................... 19

*Traffix, Inc. v Herold*,
269 F Supp 2d 223 (SDNY 2003) ........................................................... 22

**Statutes**

CARES Act ...................................................................... 1, 2, 12, 18

**Other Authorities**

Executive Order 202.6 ........................................................................ 5

H.R. 748, Section 3501 ...................................................................... 12

178465.2 10/16/2020

https://esd.ny.gov/guidance-executiveg-order-2026 ........................................................................5

Rule 12(b)(6) ................................................................................................................................6

Rule 12(c) ..............................................................................................................1, 3, 6, 7

*Webster's 3d New Int'l Dictionary* (1993) ...................................................................................11

## PRELIMINARY STATEMENT

Defendant MERCY College ("MERCY") submits this memorandum of law in support of its motion pursuant to Rule 12(c) for dismissal of the entirety of the purported class action filed by Nickesha Thomas ("Thomas") and Cindy Vazquez ("Vazquez") (collectively "Plaintiffs").

Plaintiffs, MERCY students, purport to represent a class of MERCY students and seek to recover damages for, *inter alia,* breach of contract in light of the global COVID-19 pandemic, and as required by mandatory state closure orders, because MERCY transitioned to remote instruction in the middle of this year's Spring Term at MERCY.

Plaintiff Thomas continued in her chosen course of instruction for the entirety of the Spring Term, received the benefit of instruction from the same MERCY faculty who were teaching her courses before the state-mandated shutdown of on-campus instruction, and she was awarded credits for those courses toward a MERCY degree.

Plaintiff Vazquez did not pay any "out of pocket" money for the 2020 Spring semester. Instead, she initially was able to cover the costs of tuition and fees by a combination of grants and loans. Plaintiff Vazquez continued in her chosen course of instruction at MERCY for approximately one month after the school transitioned to remote instruction. Thereafter, on April 20, 2020, she withdrew before the end of the Spring semester. As a consequence, Plaintiff Vazquez did not end up either paying or being indebted for tuition or fees for the Spring 2020 semester. This is because pursuant to the CARES Act those students, like Plaintiff Vazequez, that withdrew anyt time before the end of the Spring 2020 semester, had their federal student loans forgiven (and Plaintiff Vazquez only had federal loans for the Spring semester). *See* Answer to Amended Complaint ("Answer"), ¶20, Exhibit G and Exhibit F. In short, Plaintiff Vazquez has no damages even if she could prove her claims – which she cannot.

MERCY publishes student catalogs and other policies that are provided to all students. Plaintiffs have not alleged any enforceable promise in those documents that MERCY will provide in-person, on-campus instruction, even in the face of a global pandemic and a state-ordered shutdown of in-person instruction.  Instead, Plaintiffs seek to form a new contract based on generalized statements set forth on the MERCY website reviewing the benefits of on-campus study.  *See* Amended Complaint ("Complaint"), ¶36.

Plaintiff Thomas's action must be dismissed because although MERCY had to quickly pivot to remote instruction due to the pandemic, Plaintiff Thomas received what she bargained for when she enrolled at MERCY-- instruction in her chosen courses by MERCY faculty and, upon completion of her course work, credit toward a MERCY degree. Plaintiff Vazquez's action must be dismissed, *inter alia,*  because her Spring 2020 loan amounts were forgiven under the CARES Act once she withdrew from the Spring semester, leaving her without any claim for damages against MERCY.

As to remote instruction, Plaintiffs do not seek to enforce any specific promise made by MERCY with respect to how classes will be conducted, instead,  they allege that remote instruction offered by MERCY was "subpar in practically every aspect, from the lack of facilities, materials and access to faculty." Complaint ¶15.  Plaintiffs ask that this Court create a contract prohibiting remote instruction absent a discount or refund where no such contract exists, and enforce it on behalf of all MERCY students.

Inherent in this request is that the Court will review the instruction that was provided following the shutdown, evaluate the "worth" of that instruction as compared to on-campus instruction, and arrive at a "contractual" price for that instruction and award a credit toward a MERCY degree. New York courts have steadfastly refused to enter the realm of academic decision

making. They have refused to substitute their judgment for that of the academic officials who govern the state's higher education institutions. While many decisions have identified that the relationship between a student and a college or university is contractual, the New York Court of Appeals has cautioned that in analyzing the relationship between a student and a college, "contract theory is not wholly satisfactory." *Tedeschi v. Wagner College,* 49 N.Y.2d 652, 658 (1980). Accordingly, courts in New York will only enforce <u>specific</u> promises "contained in the university's bulletins, circulars and regulations." *Papelino v. Albany College of Pharmacy,* 633 F.3d 81, 92 (2d Cir. 2011). Here, there is no such <u>specific</u> promise identified in the complaint, and the Court should, therefore, dismiss the Complaint.

## BACKGROUND

Plaintiff Thomas's Complaint was filed on May 7, 2020. Docket No. 1. This original Complaint contained causes of action for breach of contract, unjust enrichment and conversion. Plaintiff purported to represent a class of MERCY students during the Spring 2020 Semester. She also proposed a subclass consisting of "Class members who reside in New York (the "Subclass")". MERCY answered the Complaint on August 31, 2020. Docket No. 14. Thereafter, Plaintiffs Thomas and Vazquez filed a First Amended Complaint on September 21, 2020. Docket No. 16. The Amended Complaint (the "Complaint") contains causes of action for breach of contract, unjust enrichment, conversion and money had and received. *Id.* MERCY answered the First Amended Complaint on October 9, 2020 ("Answer") (Docket No. 23), and it now seeks dismissal under Rule 12 (c).

MERCY is a private college with campus locations in Manhattan, the Bronx and Westchester, New York. MERCY published to its students its 2019-2020 Undergraduate Catalog (the "Catalog"), which sets forth the below policy applicable to Plaintiff:

178465.2 10/16/2020

> While every effort has been made to ensure the accuracy of the information in this catalog at publishing, Mercy College reserves the right to alter its degree requirements, regulations, procedures, and course offerings.

Answer, ¶ 34, (*citing*   http://catalog.mercy.edu/index.php?catoid=3 ).  The Catalog further states:

> Notwithstanding anything contained in this catalog, the College administration expressly reserves the right, whenever it deems advisable: (1) to change or modify its schedule of tuition and fees, and (2) to withdraw, cancel, reschedule, or modify any course, program of study, or degree, or any requirements in connection with any of the foregoing.

Answer, ¶34 (*citing* http://catalog.mercy.edu/content.php?catoid=3&navoid=125 ) . MERCY's

student bulletin states:

> Mercy College reserves the right to revise or change its academic calendar, rules, charges, fees, schedules, courses, requirements for degrees and other regulations, policies or practices affecting students whenever considered necessary or desirable. The foregoing changes may include, without limitation, the elimination of courses, and programs.

Answer, Exhibit C.

On March 11, 2020, MERCY announced that because of concerns caused by the spread of the novel coronavirus, beginning on March 16, 2020, through at least March 22, 2020, MERCY would be conducting instruction remotely. Complaint, ¶32.  On March 18, 2020, MERCY followed up with a second announcement that the classes would continue to be held remotely for the remainder of the 2020 Spring Term. Complaint, ¶32.

No MERCY document, including its Catalog or bulletins, promises that instruction will always be in-person and on-campus, much less includes a statement that such in-person instruction will take place in the midst of a global pandemic and in violation of state closure mandates.

4

MERCY's announcement coincided with government actions. On March 13, 2020, the President of the United States declared a National Emergency in connection with the pandemic.[1] On March 20, 2020, New York Governor Andrew Cuomo issued Executive Order 202.6, mandating a statewide shutdown of non-essential businesses. Answer, ¶14, Exhibit A. Guidance issued by New York State made it clear that Executive Order 202.6 allowed private institutions to provide "remote instruction or streaming of classes… provided, however, that *no in person congregate classes are permitted*." New York Department of Economic Development, Guidance for Determining Whether a Business is Subject to a Workforce Reduction Under Recent Executive Orders, last updated June 29, 2020 (emphasis supplied).[2]

Plaintiffs' Complaint does not contest that continuing with in-person, on-campus instruction was rendered impossible by the global pandemic and the state-ordered shutdown. Nor do Plaintiffs challenge the necessity of MERCY's actions or that MERCY's transition to remote instruction was required by the State of New York, and to protect the health of MERCY students, faculty and staff;  rather,  Plaintiffs allege that "Even if  Defendant did not have a choice in cancelling in-person classes, it nevertheless has improperly retained funds for services it is not providing." Complaint, ¶17.   Instead of alleging that the instruction did not continue, or that Plaintiffs  did not receive instruction through the end of the Spring Semester, the Complaint alleges that MERCY continued instruction remotely, therefore, MERCY is contractually obligated to adjust  the tuition and fees to compensate Plaintiffs for their loss of an on-campus experience.

---

[1]     The Court may take judicial notice of government actions in connection with a motion to dismiss. *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002).

[2]     *Id.  See also* https://esd.ny.gov/guidance-executiveg-order-2026.

178465.2 10/16/2020

Complaint, ¶ 63.   There was, however, no express or implied contract requiring an on-campus experience in exchange for tuition or fees.

## ARGUMENT

## STANDARD FOR RULE 12(c) DISMISSAL

After the pleadings are closed, a motion to dismiss for failure to state a claim is properly brought as a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. *Maggette v. Dalsheim*, 709 F.2d 800, 801 (2d Cir. 1983). The motion for judgment on the pleadings is then treated according to the same standard as a motion to dismiss under Rule 12(b)(6). *Id.*

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  A plaintiff's factual allegations must also be sufficient to give the defendant "'fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*, 550 U.S. at 555. When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 71 (2d Cir. 1995).

In deciding a motion to dismiss under Rule 12(c), the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice. *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009). The court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as

178465.2 10/16/2020

well as any documents attached to the pleadings as exhibits. *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010); Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc.*, 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment).

As explained below, on the basis of the above Rule 12(c) standard of review, the Complaint should be dismissed in its entirety.

<u>**POINT I**</u>

<u>**PLAINTIFFS' BREACH OF CONTRACT CLAIMS MUST BE DISMISSED**</u>

A. <u>**Plaintiffs' Tuition Claim Must Be Dismissed Because It Fails For Lack of A Specific Contractual Promise**</u>

Plaintiff Thomas is an undergraduate student enrolled at MERCY in its Nursing program. Plaintiff Vazquez is an undergraduate student pursuing a bachelor's degree in Biology at MERCY. Both Plaintiffs allege that their respective programs at MERCY rely "extensively on in-person instruction, peer collaboration, and access to MERCY's facilities. None of these resources are available to [Ms. Thomas/ Ms. Vazquez] while in-person classes are suspended." Complaint, ¶¶19-20. Plaintiffs further allege that "Plaintiffs and members of the Class did not choose to attend an online institution of higher learning, but instead chose to attend Defendant's institution and enroll on an in-person basis." Complaint, ¶35. Therefore, when MERCY moved to online instruction due to the COVID-19 pandemic and New York State's mandatory closure orders, it purportedly did not fulfill its contractual obligations towards the Plaintiff and the putative class. Amended Complaint, ¶¶34, 35. Plaintiffs seeks recovery of "the pro-rated tuition and fees,

178465.2 10/16/2020

proportionate to the amount of time that remained in the Spring Semester 2020 when class moved online and campus services ceased being provided." Complaint, ¶18.

Plaintiffs, of course, do not allege any written contractual agreement in support of their claims. The implied contract claimed by Plaintiffs is contrary to well-established New York law governing the relationship between a student and a college or university. Although numerous decisions state that the basis of the legal relationship between a college and its student is contractual, as explained below, the New York Court of Appeals has uniformly stated that contractual claims by students against a college are extremely limited.

A breach of contract claim by a student against a university must allege breach of a specific promise by the university. *See, e.g., Habitzreuther v. Cornell Univ.*, 5:14-cv-1229, 2015 U.S. Dist. LEXIS 112209, at *10-11 (N.D.N.Y. Aug. 25, 2015). Plaintiffs' contractual claims fail here for two independent reasons: First, Plaintiffs cannot identify any specific promise of on-campus instruction (even in the face of a pandemic and a state-mandated shutdown of the campus) in MERCY's Catalog. Second, inherent in Plaintiffs' allegations is that this Court will be required to conduct an evaluation of MERCY's remote instruction during the second half of the Spring 2020 Semester, arrive at a judgment of its value, and order a reimbursement of tuition based on this evaluation.[3] MERCY's administration concluded that instruction could and should continue through the Spring 2020 Semester and that the completion of such instruction would be sufficient

---

[3]     The highly subjective determination of the "value" of in-person instruction would vary significantly by individual student, making Plaintiffs' efforts to represent a class of students dubious. Students at MERCY have different programs and experiences: many enroll in classes that are taught fully by lecture and do not involve any "hands-on" work. Others may not engage in activities on campus that arguably require physical presence. The "value" of this "face-to-face" experience will vary greatly depending on the student. The prospect of such a student-by-student evaluation demonstrates that class certification of the claims herein would be highly problematic. It also demonstrates why New York courts have declined to entertain the type of "breach of contract" claims asserted by Plaintiffs here.

178465.2 10/16/2020

to earn credits toward a MERCY degree.[4]  Under New York law, it is not for this Court to evaluate the academic programming offered by MERCY in the face of the pandemic and determine its worth.

The New York Court of Appeals has recognized  that "[w]hen a student is duly admitted by a private university, secular or religious, there is an implied contract between the student and the university that, if he complies with the terms prescribed by the university, he will obtain the degree which he sought."  *Carr v. St. John's Univ.*, 17 A.D.2d 632, 633 (2d Dept. 1962), *aff'd on opinion below*, 12 N.Y.2d 802 (1962). The Court of Appeals provided further illumination of the relationship between a college and its students in *Tedeschi v. Wagner Coll.*, 49 N.Y.2d 652 (1980). In *Tedeschi*, the Court of Appeals reinstated a student who had been dismissed from Wagner College without a hearing, holding that "when a university has adopted a rule or guideline establishing the procedure to be followed in relation to suspension or expulsion that procedure must be substantially observed."  49 N.Y.2d at 660.  Wagner College had published such a hearing requirement in a document it published entitled "1976-1977 Guidelines of Wagner College."  49 N.Y.2d at 657. The Court of Appeals noted, however, that "contract theory is not wholly satisfactory" in defining the relationship between a student and a university:

> Contract theory is not wholly satisfactory, however, because the essentially fictional nature of the contract results in its generally

---

[4]     Respectfully, this Court should not second-guess the Governor's Orders and MERCY's decisions and the need to keep students, faculty and staff safe in the face of this deadly pandemic. Thus, even if a contract for in-person, on-campus instruction existed, which it did not, Plaintiffs have not alleged what MERCY should have done differently.  Plaintiffs  are not claiming that MERCY should have *ignored* COVID-19 and continued to offer in-person instruction, risking the health of students, faculty, and staff. If MERCY had done so, no doubt it would have been sued for *not* offering remote learning to allow students to complete the semester safely. Likewise, Plaintiffs  are not claiming  they would have preferred that the entire Spring 2020 semester be cancelled and postponed to next year thereby upending  their schedule and that of thousands of other students' and delaying their graduations. COVID-19 created an unprecedented challenge to MERCY and other universities and colleges.   Instead, of acknowledging and praising MERCY's quick pivot to remote learning at considerable expense to MERCY, Plaintiffs seek to leverage the pandemic to gain a monetary advantage to which  they are not entitled. MERCY's response to the unprecedented pandemic was reasonable, responsible, and similar to the actions of most every other institution of higher learning and millions of businesses.

9

> being assumed rather than proved, because of the difficulty of its
> application, and because it forecloses inquiry into, and a balancing
> of, the countervailing interests of the student on the one hand and
> the institution on the other.

49 N.Y.2d at 658 (citation omitted).

The Court of Appeals reiterated the limited usefulness of contract theory in higher education cases in *Maas v. Cornell University*, 94 N.Y.2d 87 (1999).  The Court of Appeals noted that courts only "retain a restricted role in dealing with and reviewing controversies involving colleges and universities." 94 N.Y.2d at 92.  The Court of Appeals also described the limited reach of breach of contract claims by students:

> In the context of the relationship between a university and a student,
> this Court in *Tedeschi* held that "when a university has adopted a
> rule or guideline establishing the procedure to be followed in
> relation to suspension or expulsion that procedure must be
> substantially observed." We explicitly cautioned that the legal
> theory upon which this rule emerges is, however, not well defined,
> and that the "[c]ontract theory is not wholly satisfactory". Further,
> we concluded that "[s]o much of the complaint as sought money
> damages and the right to a due process hearing based on claimed
> 'state action' was properly dismissed'.   Therefore, *Tedeschi*
> provides no support for Maas' claim under the alleged breach of
> contract theory.

94 N.Y.2d at 94-95 (internal citations omitted).

Courts have steadfastly followed the admonition of the New York Court of Appeals that the terms of a contract between a college and a student should not be assumed.  Accordingly, courts have limited contractual claims to enforce  specific promises "'contained in the university's bulletins, circulars and regulations.'"  *Papelino v. Albany Coll. of Pharm.*, 633 F.3d 81, 93 (2d Cir. 2011) (quoting *Vought v. Teachers Coll., Columbia Univ.*, 127 A.D.2d 654, 654 (2d Dept. 1987)); *Keefe v. New York Law Sch.*, 71 A.D.3d 569, 570 (1st Dept. 2010) ("However, only specific promises set forth in a school's bulletin, circulars and handbooks, which are material to the student's relationship with the school, can establish the existence of an implied contract.").

10

Courts have dismissed an implied breach of contract claim where, as here, the student failed to allege specific promises. *Lloyd v. Alpha Phi Alpha Frat.*, 96-cv-348, 1999 U.S. Dist. Lexis 906 (N.D.N.Y Jan. 26, 1999). *See also Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 207 (S.D.N.Y. 1998); *Faiaz v. Colgate Univ.*, 64 F. Supp. 3d 336, 359 (N.D.N.Y. 2014); *Jones v. Trustees of Union Coll.*, 92 A.D.3d 997, 999 (3d Dept. 2012). In *Gally*, *Faiaz* and *Jones*, the courts likewise granted dismissal of breach of contract claims where the student failed to "identify the specific terms of the implied contract that he claims were violated by the College." *Jones*, 92 A.D.3d at 999.[5] Similarly, in *Prasad v. Cornell Univ.*, 2016 U.S. Dist. LEXIS 161297 (N.D.N.Y. Feb. 24, 2016), the court dismissed a breach of contract claim against Cornell University where the student plaintiff failed to allege a specific contractual promise that had been breached by Cornell. *Id.*, at *63.

Here, in seeking a reimbursement of "tuition," Plaintiffs are asking the Court to create a new definition of "tuition," i.e., that it is a payment for the extrinsic benefit of an on-campus academic experience. Plaintiffs expressly alleges that: "The tuition and fees for in-person instruction at MERCY are higher than tuition and fees for online programs because such costs cover not just the academic instruction but encompasses an entirely different experience… ." Complaint, ¶40. The dictionary definition of "tuition" is: "payment for instruction." *Webster's 3d New Int'l Dictionary* (1993). New York courts have applied this dictionary definition when interpreting the meaning of "tuition." *Bianco v. Bianco*, 36 A.D.3d 490, 491 (1st Dept. 2007) (agreement to pay for "tuition" only applied to the charge for instruction). Here, Plaintiff is seeking

---

[5]     Courts in other jurisdictions take the same approach. For example, in *Richter v. Catholic University of America*, No. 18-00583, 2019 U.S. Dist. LEXIS 20150 (D.D.C. Feb. 5, 2019), the plaintiff, relying on documents outlining students' obligations, argued that the university entered into an enforceable contract whereby it guaranteed the plaintiff the "right to meet regularly" with his professors to give the plaintiff the "best chance possible to improve his grades." *Id.* at *10-*11. The court dismissed the plaintiff's breach of contract claim with prejudice, noting that the notion that the university "somehow bound itself contractually [to these specific items] borders on the absurd." *Id.* at *11.

this Court to ignore the definition of tuition and instead quantify an "experience" which invariably would be different for every purported class member.

Here, MERCY met the terms of any implied contract with its students: It continued to provide Plaintiffs with instruction by MERCY faculty following the state-ordered shutdown of its campus. Plaintiff Thomas took advantage of that instruction and earned credits toward her MERCY degree, whereas Plaintiff Vazquez chose to withdraw and incurred no damages. Plaintiffs cite no requirement in the MERCY Catalog, Course Bulletin, Class Schedule Search or any other document that instruction must be provided in a physical classroom setting. To the contrary, in the Catalog, MERCY expressly reserves the right to modify its educational program. Answer, ¶34. It is hard to imagine a more compelling reason to modify the educational program than to protect the health of MERCY students, faculty and staff during a global pandemic and to comply with a state-mandated shutdown of the MERCY campus.[6] Moreover, Plaintiff Thomas only paid $307 in tuition and fees to MERCY for the Spring semester, and for the balance of the tuition and fees Plaintiff Thomas took out a $6,250 loan (which would have been forgiven under the CARES Act if she had withdrawn). Answer, ¶19. *See also* Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), P.L. 116-136, H.R. 748, Section 3501, *et seq.* The law does *not* allow Plaintiff Thomas to retain the benefits *after* she ratified MERCY's conduct and then seek a refund. Allowing that would amount to a wholesale rewriting of the bargain and unjustly enrich *Plaintiff Thomas* by allowing her to receive the education and credits for a reduced price after receiving the benefits from MERCY. There is no basis in law that would allow such a result and Plaintiff

---

[6] MERCY's answer (Docket No. 23) asserts the defense of impossibility. Plaintiff cannot seriously contest that it was impossible to continue on-campus instruction in the face of the global pandemic and a government-ordered shutdown of in class instruction.

Thomas's claim should be dismissed with prejudice.  As for Plaintiff Vazquez, as explained *supra*, she has no damages since she withdrew.  Answer, ¶20.

A claim similar to Plaintiffs' was rejected in *Paynter v. New York Univ.* 66 Misc. 2d 92 (1st Dept. 1971).  In *Paynter*, NYU had suspended classes in May 1970 following campus unrest over United States troops entering Cambodia and the deaths of students at Kent State University. Of course, there was no technology to provide remote instruction in 1970, and the classes just stopped. The lower court had ordered a tuition refund based on the cancellation of the final 19 days of classes at NYU.  The Appellate Term reversed, holding that "the services rendered by the university cannot be measured by the time spent in a classroom."  *Id*. at 92.  The Appellate Term further noted that it was not for the courts to substitute their judgment for that of the school's administrators that classes could not continue.  *Id.* at 92-93[7].

Unable to find any specific promise, Plaintiffs simply allege that MERCY "markets the Mercy on-campus experience as a benefit of enrollment on Mercy's website."  Complaint, ¶36. However, the courts have routinely refused to enforce aspirational goals in documents published by colleges and universities as part of an implied contract with the school's students.  *See, e.g., Faiaz v. Colgate Univ.*, 64 F. Supp. 3d at 360; *Rolph v. Hobart & William Smith Colls.*, 271 F. Supp. 3d 386, 407 (W.D.N.Y. 2017); *Knelman v. Middlebury Coll.*, 898 F. Supp. 2d 697, 709 (D. Vt. 2012); *Gally*, 22 F. Supp. 2d at 208; *see also Cheves v. Trustees of Columbia Univ.*, 89 A.D.3d 463 (1st Dept. 2011).  In *Cheves*, the First Department affirmed dismissal of a breach of contract claim by an alumnus of Columbia who had been banned from the campus.  The First Department followed the oft-stated rule that "only specific promises set forth in a school's bulletins, circulars,

---

[7]     To the extent that Plaintiffs are claiming that as a result of the global pandemic MERCY cancelled one week of classes from March 11 through March 15, 2020, and it did not extend the academic year proportionately to compensate for lost instruction, it should be noted that a decision was made by MERCY to offer full course credit to the students, and in fact Plaintiff Thomas availed herself of the same.

and handbooks, which are material to the student's relationship with the school, can establish the existence of an implied contract." 89 A.D.3d at 464 (quoting *Keefe*, 71 A.D.3d at 570).  The First Department rejected the plaintiff's assertion that statements in an alumni brochure describing benefits available to alumni were the type of specific promises that could be enforced under an implied contract theory.  Similarly, here, the statements on MERCY's website about the on-campus experience at MERCY are not legally enforceable promises that instruction will be delivered on-campus even in the face of a global pandemic and a state-ordered shutdown of the MERCY campus.

MERCY fully agrees that, in the absence of a global pandemic, the on-campus experience normally enjoyed by its students may have been preferable to the remote instruction provided since the forced closure of the campus.  However, the pandemic created a reality to which everyone had to adapt.  MERCY has met its contractual obligations to its students by adapting to the mandate for remote instruction, and it provided Plaintiffs instruction with the same MERCY faculty who were providing instruction before the pandemic, and by awarding credits to the students (like Plaintiff Thomas) who have completed the prescribed course of instruction.

For the above reasons, the Court should dismiss Plaintiffs' tuition breach of contract claim with prejudice.

B.  **Plaintiffs' Tuition Claim Must Be Dismissed Because New York Courts Do Not Recognize Claims for "Educational Malpractice"**

Plaintiffs' breach of contract claims also must be dismissed because they run afoul of New York's steadfast refusal to recognize claims of "educational malpractice."  The courts have repeatedly stated that "a student may not seek to avoid this rule by couching such a claim as a breach of contract claim."  *Papelino*, 633 F.3d at 93.  *See also Gally*, 22 F. Supp. 2d at 206-07

14                    178465.2 10/16/2020

("Where the essence of the complaint is that the school breached its agreement by failing to provide an effective education, the complaint must be dismissed as an impermissible attempt to avoid the rule that there is no claim in New York for 'educational malpractice.'" (quoting *André v. Pace Univ.*, 170 Misc. 2d 893, 896 (2d Dept. 1996)).  Plaintiffs' supposed breach of contract claim should be recognized for what it is – a claim for educational malpractice.  Plaintiffs allege that the remote instruction provided by MERCY faculty did not provide as effective and valuable an education as did the on-campus instruction provided prior to the global pandemic.

Educational malpractice claims are not recognized in New York because they would require courts to substitute their judgment for that of the academic officials entrusted with administering the state's colleges and universities.  Accordingly, "claims that sound in tort and ask the Court to involve itself in the subjective professional judgments of trained educators will not survive a motion to dismiss merely because the plaintiff couches her claims in terms of breach of contract." *Gally*, 22 F. Supp. 2d at 207.  *See also Olsson v. Bd. of Higher Educ.*, 49 N.Y.2d 408, 413 (1980) ("Because such determinations rest in most cases upon the subjective professional judgment of trained educators, the courts have quite properly exercised the utmost restraint in applying traditional legal rules to disputes within the academic community.").

Here, in the face of a global pandemic, and a state-mandated shutdown of in-person instruction, MERCY's administrators exercised their judgment that effective instruction could continue remotely, and that MERCY would award credit to students who completed the work remotely.  Plaintiffs ask this Court to evaluate the instruction MERCY faculty provided and make a different judgment than that made by MERCY's administration.  This is the exact type of review that New York courts have declined to undertake.  There is no way for this Court to evaluate the value of the education provided by MERCY other than by substituting its judgment for that of

MERCY's administrators.  In *Paladino v. Adelphi Univ.*, the Second Department ordered the dismissal of breach of contract claims against a private elementary school, noting that the claims ran afoul of the refusal by New York courts to entertain claims of educational malpractice. 89 A.D.2d 85 (2d Dept. 1982). The Second Department stated:

> Where the essence of the complaint is that the school breached its agreement by failing to provide an effective education, the court is again asked to evaluate the course of instruction.  It is similarly called upon to review the soundness of the method of teaching that has been adopted by an educational institution.  There is nothing novel about a contract action that would permit for judicial intervention into the process of learning.  For in effect, the claim still requires judicial displacement of complex educational determinations made by those charged with the responsibility to instruct the child….
>
> ****
>
> The courts should not become engaged in determining the propriety of the course instruction adopted by a private school….Simply put, the courts should refrain from becoming overseers of the learning process.

89 A.D.2d at 89-91.

Although *Paladino* involved a private elementary school, it has been repeatedly cited in the higher education context.  *See, e.g., Habitzreuther*, 2015 U.S. Dist. LEXIS 112209, at *11; Gally, 22 F. Supp. 2d at 206; *André v. Pace Univ.*, 170 Misc. 2d 893 (2nd Dept. 1996).  In *André*, the Second Department reversed an award of damages entered by the court below, which had ordered a refund of tuition paid for a course at Pace University on a breach of contract theory.  The students alleged that the instruction provided in a course was at a higher level than what the school catalog described and the trial court awarded a refund of tuition after a trial.  The Second Department reversed the lower court's judgment, holding that "the court below improperly engaged in judicial evaluation of a course of instruction that the courts of this State have

16

consistently held is the proper domain of educators and educational institutions entrusted to the task."  170 Misc. 2d at 899.

Moreover, while Plaintiff Vazquez withdrew, Plaintiff Thomas chose to continue with the Spring Semester after the announcement of March 11, 2020, and even enrolled in the Summer Semester, which was taught remotely with no discount in tuition. *See* Answer, Ex. E.  She received instruction and credit toward her degree for the Spring semester, and she has not plausibly alleged any breach of contract by MERCY.  Accordingly, the breach of contract claim must be dismissed.

### C.  Plaintiff's Tuition Claim Must Be Dismissed Pursuant to the Terms of the MERCY's Policies

Plaintiffs' Complaint cites marketing materials (Complaint, ¶36) for the proposition that they were entitled to in-class instruction but cites nothing – and there is nothing – promising in-class instruction.  MERCY closed its doors entirely due to an emergency, nonetheless it continued to provide remote instruction with the same faculty, content and academic standards. Certainly, a result that is more beneficial to its students.  Moreover, the actual express policies set forth in MERCY's catalog and bulletin gave it the flexibility to do so.  *See* Answer, ¶34, Exhibits C and D.  In short, Plaintiffs' breach of contract claim fails and should be dismissed with prejudice.

### POINT II

### PLAINTIFFS' UNJUST ENRICHMENT CLAIM MUST BE DISMISSED

Plaintiffs' second claim is for unjust enrichment.  Plaintiffs allege that the "tuition for Spring Semester 2020 was intended to cover in-person educational services from January through May 2020" and that MERCY will be unjustly enriched if it retains Plaintiffs' tuition.  Complaint, ¶¶ 66-69.  A claim for unjust enrichment requires that a plaintiff "establish 1) that the defendant

178465.2 10/16/2020

benefitted; 2) at the plaintiff's expense; and 3) that 'equity and good conscience' require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (citation omitted).

Plaintiff's unjust enrichment claim must be dismissed because it is nothing more than a restatement of his breach of contract claims. *See, e.g., Jeffers v. American Univ. of Antigua*, 125 A.D.3d 440, 443 (1st Dept. 2015) ("Plaintiffs' unjust enrichment claims are 'indistinguishable from [their] … claim[s] for breach of contract, and must be dismissed as duplicative of the contract claim[s]'" (citation omitted)). In *Jeffers*, nursing students commenced an action against their school after they were delayed in taking their licensing exam. They alleged that the school's bulletins, circulars and handbooks formed an implied contract that they would be eligible to sit for the licensing exam upon graduation from the school. The First Department dismissed the unjust enrichment claim as duplicative of the implied contract. *Id.*

Even if Plaintiffs' unjust enrichment claim was not barred by the existence of an implied contract, they have alleged no facts showing that "equity and good conscience" requires a refund of tuition. MERCY's actions were not taken on a whim; rather they were taken to protect the health of its students, faculty and staff during the pandemic, and as required by orders of New York State. Moreover, Plaintiffs do not allege that MERCY's faculty failed to provide or make available to them instruction in their courses during the balance of the Spring Term. Nor do Plaintiffs allege that MERCY did not pay its faculty members for providing that instruction. MERCY did not pocket a pile of money when it was forced to close the campus. It continued to pay its faculty members and incur the usual expenses of operating an educational institution, plus additional expenses to address the pandemic. MERCY continued other vital services albeit often through remote means. While Plaintiff Vazquez withdrew a month after MERCY announced its move to online instruction thereby receiving the benefit of loan cancellation under the CARES

Act, Plaintiff Thomas chose to continue with the online instruction and earned credits.  Nothing in equity or good conscience requires a refund of tuition or fees.  Accordingly, Plaintiffs' unjust enrichment claims must be dismissed.

## POINT III

## PLAINTIFFS' CONVERSION CLAIM MUST BE DISMISSED

Like Plaintiffs' unjust enrichment claim, a claim for conversion "cannot be predicated on a mere breach of contract." *Jeffers*, 125 A.D.3d at 443.  Instead, "[f]or a conversion claim to succeed in the context of a dispute regarding a contract, the breach of contract must result in some 'wrong' that is separately actionable." *Citadel Mgmt., Inc. v. Telesis Tr., Inc.*, 123 F. Supp. 2d 133, 148 (S.D.N.Y. 2000); *see also Fesseha v. TD Waterhouse Inv. Servs., Inc.*, 305 A.D.2d 268, 269 (1st Dept 2003) (rejecting conversion claim where it "alleged no independent facts sufficient to give rise to tort liability" beyond those asserted in connection with contract claim).

Plaintiffs' conversion claim is indistinguishable from  their contract claim — they both call for a refund of tuition and fees premised on the same allegations. There is no allegation of any wrongful act by MERCY that is separately actionable. Accordingly, the Court should dismiss Plaintiffs' conversion claim.

Moreover, Plaintiffs' conversion claim fails because the general rule in New York is that "'an action for conversion will not normally lie' when it involves intangible property because there is no physical item that can be misappropriated." *Thyroff v. Nationwide Mut. Ins. Co.*, 8 N.Y.3d 283, 289 (2007) *quoting Sporn v. MCA Records*, 58 N.Y.2d 482, 489 (1983)); *accord Matzan v. Eastman Kodak Co.*, 134 A.D.2d 863, 864 (4th Dept 1987) ("A claim for conversion does not lie for the withholding of indefinite, intangible and incorporeal species of property.").

178465.2 10/16/2020

Here, as stated, the Plaintiffs are asking the Court to conduct an evaluation of MERCY's remote instruction during the second half of the Spring 2020 Semester, arrive at a judgment of its value, and order a reimbursement of tuition based on this evaluation.  Complaint, ¶¶75-78.   This type of calculation bears no resemblance to tangible property. Instead, it is an "indefinite, intangible and incorporeal species of property," that cannot be the subject of a conversion action. *See Matzan,* at 864.  *See also  Chung v Sano*, 2011 U.S. Dist. LEXIS 34989, at \*25, \*27 (E.D.N.Y. Mar. 31, 2011) (noting that "stock interests" cannot be converted).[8]  Plaintiffs' conversion claim thus fails because conversion of money will fail where, as here the money is not "specifically identifiable and segregated.  *Shafferman v. Queens Borough Pub. Lib. (In re JMK Constr. Group, Ltd.)*, 502 BR 396, at 414  (Bankr S.D.N.Y. 2013); *see also Global View Ltd. Venture Capital v. Great Cent. Basin Exploration, L.L.C.*, 288 F. Supp. 2d 473, 480 (S.D.N.Y. 2003) (dismissing cause of action for conversion where "complaint merely refer[red] to unspecified monies and assets . . . in an amount in excess of $75,000" and where there was "no indication of an identifiable fund or otherwise segregated amount, nor . . . any description of the alleged transfer or transfers from which the Court could infer a specifically identified fund of money").

Therefore, the Court should dismiss Plaintiffs' conversion claim with prejudice.

## POINT IV

## PLAINTIFFS' MONEY HAD AND RECEIVED CLAIM MUST BE DISMISSED

"The essential elements for a cause of action for money had and received are (1) the defendant received money belonging to the plaintiff, (2) the defendant benefitted from receipt of

---

[8]      Indeed, MERCY notes that Plaintiffs requested that the "Rider to Proposed Case Management Plan and Scheduling Order," which the parties submitted to the Court expressly state that "given the fact-intensive nature of the allegations, discovery in this matter will heavily involve the opinions of damages experts."

178465.2 10/16/2020

the money, and (3) under principles of equity and good conscience, the defendant should not be permitted to keep the money. The action depends upon equitable principles in the sense that broad considerations of right, justice and morality apply to it." *Litvinoff v Wright,* 150 A.D.3d 714, 716 (2d Dept 2017) (citing *Goel v Ramachandran,* 111 A.D.3d 783, 790 (2d Dept 2013)))*.* "Traditionally, the remedy for money had and received is available 'if one man has obtained money from another, through the medium of oppression, imposition, extortion, or deceit, or by the commission of a trespass.'" *Panix Promotions, Ltd. v. Lewis,* No. 01-Civ-2709, 2002 U.S.Dist. LEXIS 7176, *7 (S.D.N.Y. Jan. 22, 2002) quoting *Miller v. Schloss*, 218 N.Y. 400, 408, 113 N.E. 337 (1916)). Such an action has succeeded "where plaintiff has paid money by mistake, money has been collected for an illegal tax or assessment, or property is erroneously taken or withheld by a public official." *Parsa v. State,* 64 N.Y.2d 143, 149 (1984) (citing examples of actions for money had and received). Courts have found that plaintiffs lack the requisite possessory interest in money where, as here, it was freely given to a defendant with the expectation of performance. *Panix,* at *8. *Nat'l Westminster Bank PLC v. Grant Prideco, Inc.,* 261 F. Supp.2d 265, 275 n. 69 (S.D.N.Y. 2003).

Here, Plaintiff Vazquez's money had and received claim fails at the outset because she cannot meet the first element of showing that MERCY "received money belonging to the plaintiff" considering she herself never paid ***any*** money to MERCY for the Spring 2020 semester. There are, however, other reasons both Plaintiffs' money had and received claim is fatally flawed. Specifically, neither of the Plaintiffs' allegations show that MERCY received money that was not owed to it and which equity and good conscience require it to return to Plaintiffs. Thus, Plaintiffs have not alleged – nor can they – "oppression, imposition, extortion or deceit" by MERCY. *Id.* This is a high bar to overcome, and Plaintiffs cannot make it. Not surprisingly, most plaintiffs

cannot do so, which is why "money had and received claims" are routinely subject to successful motions to dismiss.  See *Panix,* at *3, *11; *Traffix, Inc. v Herold*, 269 F Supp 2d 223, (SDNY 2003); *Fischer v Graham*, 2016 U.S. Dist. LEXIS 72749 (S.D.N.Y. June 3, 2016); *Charles Ramsey Co. v Fabtech-NY LLC*, 2020 U.S. Dist. LEXIS 9348 (N.D.N.Y. Jan. 21, 2020).

When the Spring semester started in January 2020, MERCY had every intention of providing in-person on-campus instruction through the semester, and in fact that is exactly what it was doing, until the State-mandated order to shutdown was issued. Thereafter, to ensure continuity of learning, MERCY very quickly pivoted to online instruction.  Plaintiffs and the putative class continued to receive instruction in their chosen courses by MERCY faculty. The tuition and fees for the Spring semester were not a windfall to MERCY. Indeed, MERCY not only continued to pay its faculty and incur the usual operating costs, but it also incurred additional expenses to address the pandemic.

For all of the above reasons, the Court should dismiss Plaintiffs' money had and received claim with prejudice.

22                                    178465.2 10/16/2020

## **CONCLUSION**

The Court should grant judgment on the pleadings dismissing the Complaint in its entirety with prejudice.

Dated:  October 16, 2020                    BOND, SCHOENECK & KING, PLLC


By: _____/s/_____
        Gregory B. Reilly
        Aisling McAllister
        Samuel Dobre
*ATTORNEYS FOR DEFENDANT*
MERCY COLLEGE
600 Third Avenue, 22nd Floor
New York, NY 10016
(646) 253-2330
greilly@bsk.com


178465.2 10/16/2020