**EXHIBIT A**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NICKESHA THOMAS and NOAH ZACCO, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br> v.<br><br>MERCY COLLEGE,<br><br>      Defendant. | Case No. 7:20-cv-03584-VB<br><br>**[PROPOSED] SECOND AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiffs Nickesha Thomas and Noah Zacco ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendant Mercy College ("Mercy" or "Defendant").  Plaintiffs make the following allegations pursuant to the investigation of counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

**NATURE OF THE ACTION AND FACTS COMMON TO ALL CLAIMS**

1. This is a class action lawsuit on behalf of all people who paid tuition and fees for the Spring 2020 academic semester at Mercy, and who, because of Defendant's response to the Novel Coronavirus Disease 2019 ("COVID-19") pandemic, lost the benefit of the education for which they paid, and/or the services for which their fees paid, without having their tuition and fees refunded to them.

2. Mercy is one of New York's most preeminent colleges, with an enrollment of over 11,000 students.  Mercy has five different schools (Business, Education, Health & Natural Sciences, Liberal Arts, and Social & Behavior Sciences), and offers 90 different undergraduate, graduate degree and certificate programs.

3.      Plaintiffs and Defendant entered into a contractual agreement where Plaintiffs would provide payment in the form of tuition and fees and Defendant, in exchange, would provide in-person educational services, experiences, opportunities, and other related services to Plaintiffs and Class Members.  The terms of the contractual agreement where set forth in publications from Defendant, including but not limited to Mercy's Spring Semester 2020 Course Catalog,[1] Course Bulletin,[2] and Class Schedule Search.[3]

4.      When Plaintiffs and Class Members sought to enter into a contractual agreement with Defendant for the provision of educational services for the Spring Semester 2020, Plaintiffs and Class Members viewed the Course Catalog, Course Bulletin, and Class Schedule Search to make specific course selections prior to registering and paying for selected courses.

5.      The Course Catalog provided Plaintiffs and Class Members with information regarding the courses offered, including a description of each course.  Nowhere within the Course Catalog is it indicated that in-person classes were to be taught remotely.  Similarly, Defendant's Course Bulletin shows each course offered for the Spring 2020 semester, along with the courses' campus location, meeting time, and the format in which the course was to be held. Exemplars of the Spring 2020 Course Bulletin are pasted below:

---

[1] http://catalog.mercy.edu/index.php?catoid=3

[2] https://www.mercy.edu/academics/sites/www.mercy.edu.academics/files/basicpage/documents/2020%20Spring%20UG%20CB%20NEW%203_11_2020.pdf

[3] https://ssb-prod.ec.mercy.edu/pls/PROD/bwckgens.p_proc_term_date



6.      Thus, fully online classes are clearly designated as such, and so are in-person classes.

7.      Indeed, prior to registering for classes, Defendant's Class Schedule Search specifically allows for students to search for classes to enroll in based on "Instructional Method," which specifically includes an option for "In-Person On-Campus," as seen below:



8. Other publications from Defendant reference the in-person nature of the Spring Semester 2020 course offerings, including course specific syllabi, Class Schedule Listings, and Defendant's Faculty Handbook.[4]

9. Course specific syllabi include, among other items, the physical on-campus location where the class will meet in person, along with the building number, building room, professor, dates, and times of instruction. Similarly, Class Schedule Listings confirm the in-person on-campus nature of classes, as shown in the example below:

---

[4] https://www.mercy.edu/sites/default/files/2019_Faculty_Handbook_amended_2020.pdf

Class Schedule Listing
_____

**Sections Found**
Medical Surgical Nursing 3 - 12247 - NURS 280 - NMB

Associated Term: Spring 2020 Semester
Registration Dates: Oct 30, 2019 to Jan 28, 2020
Levels: Undergraduate

CNR New Rochelle Campus
Lecture Schedule Type
In-Person On-Campus Instructional Method
4.000 Credits
View Catalog Entry
View Books/Materials Information

**Scheduled Meeting Times**

| Type Time | Days Where | Date Range | Schedule Type Instructional Method Instructors |
|---|---|---|---|
| Class 8:30 am - 12:30 pm T | SWEENY STUDENT CENTER SWEENY B | Jan 22, 2020 - May 13, 2020 Lecture | In-Person On-Campus  Gwen E Hobson (P) 😊 |

10.     Defendant's Faculty Handbook also reinforces the in-person nature of instruction by providing that "[f]aculty are required to be reasonably available to students outside the classroom for purposes of assisting them with coursework and providing academic advisement. Such access may involve a combination of office hours, responsiveness to e-mail, and presence on campus."[5]  It also provides that a faculty member's outside employment "cannot conflict with one's paramount obligations to students, colleagues, and the College, including, but not limited to, teaching, office hours, advising, scholarship as applicable, active committee and other service to the academic unit, the school, and the College."  *Id.*  Mercy's Faculty Handbook also states that "[l]ecturers are responsible for all aspects of teaching their assigned course(s), as well as for keeping office hours, student advising, attendance at department, school, and College meetings, and related activities."  *Id.*

11.     On March 10, 2020, Mercy announced that because of the global COVID-19 pandemic, classes would be cancelled March 11 through March 15, 2020 and that classes would resume thereafter remotely starting Monday, March 16.[6]

_____

[5] mercy.edu/sites/default/files/2019_Faculty_Handbook_amended_2020.pdf
[6] https://www.mercy.edu/about-mercy/messages-mercy-college-coronavirus#panel

12.     The cancellation of these classes, in effect, deprived students of a full week of instruction that Defendant had agreed to provide as specific on the Spring Semester 2020 calendar.[7]  The academic year was not proportionately extended to compensate students for the lost instruction for which they paid.

13.     On March 18, 2020 Mercy announced that classes would be conducted online through the remainder of the Spring 2020 semester, and that Residential Housing was to close March 29 through the end of the Spring 2020 semester.[8]

14.     Mercy has not held any in-person classes since March 10, 2020.  Classes that have continued have only been offered in an online format, with no in-person instruction.  Mercy did not provide in-person education, experiences, or related services for approximately 50% of the Spring Semester 2020.

15.     As a result of the closure of Defendant's facilities, Defendant has not delivered the educational services, facilities, access and/or opportunities that Plaintiffs and the putative class contracted and paid for.  The online learning options being offered to Mercy students are subpar in practically every aspect, from the lack of facilities, materials, and access to faculty. Students have been deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique.  The remote learning options are in no way the equivalent of the in-person education that Plaintiffs and the putative class members contracted and paid for.

16.     Nonetheless, Mercy has not refunded any tuition or mandatory fees for the Spring 2020 semester.

17.     Plaintiffs and the putative class are therefore entitled to a pro-rata refund of

---

[7] https://www.mercy.edu/sites/default/files/cpdocs/Spring2020UGGradAcademicCalendar_0213
2020-FINAL_1.pdf
[8] *Id.*

tuition and fees for in-person educational services, facilities, access and/or opportunities that

Defendant has not provided.  Even if Defendant did not have a choice in cancelling in-person

classes, it nevertheless has improperly retained funds for services it is not providing.

18.     Plaintiffs seek, for themselves and Class members, Defendant's disgorgement of

the pro-rated portion of tuition and fees, proportionate to the amount of time that remained in the

Spring Semester 2020 when classes moved online and campus services ceased being provided.

Plaintiffs seek a return of these amounts on behalf of themselves and the Class as defined below.

## PARTIES

19.     Plaintiff Nickesha Thomas is a citizen of New York.  Ms. Thomas is an

undergraduate student at Mercy pursuing a Bachelor's Degree in Nursing.  The Nursing program

at Mercy relies extensively on in-person instruction, peer collaboration, and access to Mercy's

facilities.  None of these resources are available to Ms. Thomas while in-person classes are

suspended.  Ms. Thomas paid approximately $6,907 in tuition and fees to Defendant for the

Spring 2020 semester.  Ms. Thomas has not been provided a refund of any tuition monies paid,

despite the fact that in-person classes have not been held since March 10, 2020.  Ms. Thomas has

also not been provided a refund of all fees, despite the fact that she paid a $430 CNR General

Student Fee, a $1,072 CNR Nursing Exam Fee, and a $213 CNR Student Activity Fee.  The

General Student Fee and Student Activity Fee, in particular, are meant to support and provide

access to in-person, on-campus experiences, facilities, events, etc., that Plaintiffs and Class

Members no longer had access to after March 11, 2020.

20.     Plaintiff Noah Zacco is a citizen of New York.  For the Spring 2020 semester at

Mercy, Mr. Zacco was enrolled as an undergraduate student pursuing a Bachelor's Degree in

Criminal Justice.  The Criminal Justice program at Mercy relies extensively on in-person

instruction, peer collaboration, and access to Mercy's facilities.  None of these resources are available to Mr. Zacco while in-person classes are suspended.  Mr. Zacco paid approximately $5,000 in tuition and fees to Defendant for the Spring 2020 semester.  Mr. Zacco has not been provided a refund of any tuition monies paid, despite the fact that in-person classes have not been held since March 10, 2020.

21.     Prior to beginning the Spring 2020 semester, and prior to paying tuition and fees, Plaintiffs consulted the Course Catalog, Course Bulletin, and Class Schedule Search and enrolled in courses for the Spring 2020 semester.  In consulting these documents, Plaintiffs understood and believed that every course in-person course in which they enrolled was to be taught in-person.  Plaintiffs' understanding and belief was based on the course specifying an on-campus location where the course would be taught in addition to the "Instructional Method" specifying "In-Person On-Campus."  This was reinforced by course specific syllabi and Class Schedule Listings issued by Defendant, which again confirmed which classes were to be held "In-Person On-Campus."  Thus, the in-person nature of the courses was part of the benefit of the bargain, and Plaintiffs would not have paid as much, if any, tuition and fees for the Spring 2020 semester at Mercy had they known that the courses would not, in fact, be taught in-person.

22.     Defendant Mercy College is a private college with its principal place of business at 555 Broadway, Dobbs Ferry, New York 10522.

## JURISDICTION AND VENUE

23.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of

interest and costs.

24.     This Court has personal jurisdiction over Defendant because it is headquartered in this District, and many of the acts and transactions giving rise to this action occurred in this District.

25.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action occurred in this District, and because Defendant is a resident of this District.  Specifically, the contract that is the subject of this action was formed in this District.

## **FACTUAL ALLEGATIONS**

### *Plaintiffs And Class Members Paid Tuition And Fees For Spring Semester 2020*

26.     Plaintiffs and Class members are individuals who paid the cost of tuition and other fees for the Spring 2020 Semester at Mercy.

27.     Spring Semester 2020 classes at Mercy began on or about January 22, 2020. Classes and final exams for the semester are scheduled for end on or around May 13, 2020.

28.     Plaintiffs and Class members paid the cost of tuition for the Spring Semester 2020.  They also paid other fees associated with the Spring Semester 2020.

29.     Undergraduate tuition costs at Mercy for the Spring 2020 Semester are approximately $9,467.00.  Mercy also offers a host of Graduate programs, which range from $867.00 to $1,030.00 per credit, excluding mandatory fees.

30.     Fees paid by Mercy students vary based on program of study and whether undergraduate or graduate, but are at minimum hundreds of dollars per semester.

31.     The tuition and fees described in the paragraph above is provided by way of example; total damage amounts – which may include other fees that are not listed herein but that

were not refunded – will be proven at trial.

### *In Response To COVID-19, Mercy Closed Campuses And Cancelled All In-Person Classes*

32.     On March 11, 2020, Mercy announced that because of the global COVID-19 pandemic, beginning Monday, March 16 all classes would be held remotely until at least March 22, 2020.  In a follow-up announcement on March 18, 2020, Mercy announced that the remainder of the Spring 2020 Semester would be held remotely.

33.     Since March 10, 2020, Mercy has not held any in-person classes.  The closure of Mercy's campuses has been extended through the end of Spring Semester 2020.  Classes that have continued have only been offered in an online format, with no in-person instruction.  Even classes for students with concentrations in areas where in-person instruction is especially crucial (such as music, theatre, nursing, and the sciences) have only had access to minimum online education options.

34.     As a result of the closure of Defendant's facilities, Defendant has not delivered the educational services, facilities, access and/or opportunities that Plaintiffs and the putative class contracted and paid for.  Plaintiffs and the putative class are therefore entitled to a refund of all tuition and fees for services, facilities, access and/or opportunities that Defendant has not provided.  Even if Defendant did not have a choice in cancelling in-person classes, it nevertheless has improperly retained funds for services it is not providing.

35.     Plaintiffs and members of the Class did not choose to attend an online institution of higher learning, but instead chose to attend Defendant's institution and enroll on an in-person basis.

36.     Defendant markets the Mercy on-campus experience as a benefit of enrollment on Mercy's website:

## Office of Student Life

The mission of the Office of Student Life is to serve all students throughout all campuses and create a vibrant co-curricular and extra-curricular experience. Through active participation, students will gain valuable and transferable skills that will enhance their college experience and enable them to be lifelong learners and responsible citizens.

## Dobbs Ferry Campus

In our Dobbs Ferry Residence Halls students enjoy stunning views of the Hudson River, a supportive community and easy access to classes, the library and athletic facilities.

Explore and discover your passions. Across our four campuses a thriving student life has a place for you to be you: 60+ clubs and organizations, on-campus events and 10 NCCAA sports teams.

## Dorm34 in Herald Square

MercyManhattan has expanded and starting in fall 2020 student will be able to live at our newly revamped campus in the heart of midtown. With options for double, triples and quads.

Student residents get instant access to the benefits of campus - community lounges, dining services, computer labs and library study space without stepping outside the buildings.

37.    The online learning options being offered to Mercy students are subpar in practically every aspect and a shadow of what they once were, from the lack of facilities, materials, and access to faculty.  Students have been deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique.

38.    The remote learning options are in no way the equivalent of the in-person education putative class members contracted and paid for.  The online education being provided is not even remotely worth the amount charged class members for Spring Semester 2020 tuition. That is clear from the fact that in-person instruction on a per credit basis is significantly higher than what Mercy charges per credit for its online degree programs.

39.    For instance, a fully-online RN to BSN program at Mercy costs approximately $437 per credit, which is about half the cost per credit for the in-person RN to BSN program.

11

40.     The tuition and fees for in-person instruction at Mercy are higher than tuition and fees for online programs because such costs cover not just the academic instruction, but encompass an entirely different experience which includes but is not limited to:

- Face to face interaction with professors, mentors, and peers;

- Access to facilities such as libraries, laboratories, computer labs, and study room;

- Student governance and student unions;

- Extra-curricular activities, groups, intramural sports, etc.;

- Student art, cultures, and other activities;

- Social development and independence;

- Hands on learning and experimentation;

- Networking and mentorship opportunities.

41.     Through this lawsuit Plaintiffs seek, for themselves and Class members, Defendant's disgorgement of the pro-rated portion of tuition and fees, proportionate to the amount of time that remained in the Spring Semester 2020 when classes moved online and campus services ceased being provided.  Plaintiffs seek return of these amounts on behalf of themselves and the Class as defined below.

## CLASS ALLEGATIONS

42.     Plaintiffs seek to represent a class defined as all people who paid Mercy Spring Semester 2020 tuition and/or fees for in-person educational services that Mercy failed to provide, and whose tuition and fees have not been refunded (the "Class").  Specifically excluded from the Class are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and their heirs, successors, assigns, or other persons or entities

12

related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

43.     Plaintiffs also seek to represent a subclass consisting of Class members who reside in New York (the "Subclass").

44.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class and Subclass may be expanded or narrowed by amendment or amended complaint.

45.     **Numerosity.**  The members of the Class and Subclass are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiffs reasonably estimate that there are tens of thousands of members in the Class and Subclass.  Although the precise number of Class members is unknown to Plaintiffs, the true number of Class members is known by Defendant and may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

46.     **Existence and predominance of common questions of law and fact.**  Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to, the following:

>    (a)     whether Defendant accepted money from Class and Subclass members in exchange for the promise to provide services;
>
>    (b)     whether Defendant has provided the services for which Class and Subclass members contracted; and

(c)     whether Class and Subclass members are entitled to a refund for that portion of the tuition and fees that was contracted for services that Defendant did not provide.

(d)     whether Defendant has unlawfully converted money from Plaintiffs, the Class and Subclass; and

(e)     whether Defendant is liable to Plaintiffs, the Class, and Subclass for unjust enrichment.

47.     **Typicality.**  Plaintiffs' claims are typical of the claims of the other members of the Class in that, among other things, all Class and Subclass members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein.  Further, there are no defenses available to Defendants that are unique to Plaintiffs.

48.     **Adequacy of Representation.**  Plaintiffs will fairly and adequately protect the interests of the Class and Subclass.  Plaintiffs have retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the Class and Subclass.  Furthermore, Plaintiffs have no interests that are antagonistic to those of the Class or Subclass.

49.     **Superiority.**  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class and Subclass members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant.  It would, thus, be virtually impossible for the Class or Subclass on an individual basis, to obtain effective redress for the wrongs committed against them.  Furthermore, even if Class or Subclass members could afford such individualized litigation, the court system could not.  Individualized litigation would create

14

the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

50.     In the alternative, the Class and Subclass may also be certified because:

(a)     the prosecution of separate actions by individual Class and Subclass members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the Defendant;

(b)     the prosecution of separate actions by individual Class and Subclass members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)     Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

<u>**COUNT I**</u>
**Breach Of Contract**
**(On Behalf Of The Class And Subclass)**

51.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

52.     Plaintiffs bring this claim individually and on behalf of the members of the Class and Subclass against Defendant.

53.     Plaintiffs and Defendant entered into a contractual relationship where Plaintiffs would provide payment in the form of tuition and fees, and Defendant, in exchange, would provide in-person educational services, experiences, opportunities, and other related services. The terms of the parties' contractual relationship are set forth in publications from Defendant, including the Spring Semester 2020 Course Catalog, Course Bulletin, and Class Schedule Search.

54.     When Plaintiffs and Class Members sought to enter into a contractual agreement with Defendant for the provision of educational services for the Spring Semester 2020, Plaintiffs and Class Members viewed the Course Catalog, Course Bulletin, and Course Schedule Search to make specific course selections prior to registering and paying tuition and fees for those selected courses.  Defendant's Course Catalog, Course Bulletin, and Class Schedule Search constitute an offer to enter a contractual agreement.

55.     The Course Catalog, Course Bulletin, and Class Schedule Search provided Plaintiffs and Class Members with information regarding the courses offered, the instructor, the days and times during which the courses would be held, and the physical on-campus location in which the courses would be held.  Indeed, the Class Schedule Search allowed students to search and register for classes based on "Instructional Method: In-Person On-Campus."  And the Course Bulletin designated classes as "CLA" to mean in-class instruction, whereas other classes were designated "ONL" to mean fully online.

56.     Through the admission agreement and payment of tuition and fees, Plaintiffs and each member of the Class and Subclass entered into a binding contract with Defendant.

16

57.     As part of the contract, and in exchange for the aforementioned consideration, Defendant promised to provide certain services, all as set forth above.  Plaintiffs, Class, and Subclass members fulfilled their end of the bargain when they paid monies due for Spring Semester 2020 tuition.  Tuition for Spring Semester 2020 was intended to cover in-person educational services from January through May 2020.  In exchange for tuition monies paid, Class and Subclass members were entitled to in-person educational services through the end of the Spring Semester.

58.     Defendant materially breached the parties' contractual agreement by failing to provide in-person education services for the entirety of the Spring Semester 2020.  The provisions of the contract breached by Defendant include, but are not limited to, the provision setting forth the details of in-person educational services as described in the Spring Semester 2020 Course Catalog, Course Bulletin, and Class Schedule Search.  These materials indicated that in-person classes would be administered in an in-person, on-campus setting.  These materials did not make any reference to the administration of in-person courses in an online format.

59.     Defendant has failed to provide the contracted for services and has otherwise not performed under the contract as set forth above.  Defendant has retained monies paid by Plaintiffs and the Class for their Spring Semester 2020 tuition and fees, without providing them the benefit of their bargain.

60.     Plaintiffs and members of the Class and Subclass have suffered damage as a direct and proximate result of Defendant's breach, including but not limited to being deprived of the education, experience, and services to which they were promised and for which they have already paid.

61.     As a direct and proximate result of Defendant's breach, Plaintiffs, the Class, and Subclass are entitled to damages, to be decided by the trier of fact in this action, to include but no be limited to reimbursement of certain tuition, fees, and other expenses that were collected by Defendant for services that Defendant has failed to deliver.  Defendant should return the pro-rated portion of any Spring Semester 2020 tuition and fees for education services not provided since Mercy has not held in-person classes since March 11, 2020.

62.     Defendant's performance under the contract is not excused due to COVID-19. Indeed, Defendant should have refunded the pro-rated portion of any education services not provided.  Even if performance was excused or impossible, Defendant would nevertheless be required to return the funds received for services it will not provide.

63.     Therefore, Defendant should return a pro-rata share of the tuition and fees paid by Plaintiffs and Class Members that relate to those in-person educational services that were not provided after Mercy suspended in-person classes on or around March 11, 2020.  In-person educational services were not provided for approximately 50% of the Spring Semester 2020.

## COUNT II
### Unjust Enrichment
### (On Behalf Of The Class And Subclass)

64.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

65.     Plaintiffs bring this claim individually and on behalf of the members of the Class and Subclass against Defendant.

66.     Plaintiffs and members of the Class and Subclass conferred a benefit on Defendant in the form of monies paid for Spring Semester 2020 tuition and other fees in exchange for certain service and promises.  Tuition for Spring Semester 2020 was intended to

cover in-person educational services from January through May 2020.  In exchange for tuition

monies paid, Class members were entitled to in-person educational services through the end of

the Spring Semester.

67.     Defendant voluntarily accepted and retained this benefit by accepting payment.

68.     Defendant has retained this benefit, even though Defendant has failed to provide

the education, experience, and services for which the tuition and fees were collected, making

Defendant's retention unjust under the circumstances.  Accordingly, Defendant should return the

pro-rated portion of any Spring Semester 2020 tuition and fees for education services not

provided since Mercy shut down on March 11, 2020.

69.     It would be unjust and inequitable for Defendant to retain the benefit, and

Defendant should be required to disgorge this unjust enrichment.

70.     Defendant should be required to disgorge all profits resulting from such

overpayments and establish a constructive trust from which Plaintiffs and Class Members may

seek restitution.


**<u>COUNT III</u>**
**Conversion**
**(On Behalf Of The Class And Subclass)**

71.     Plaintiffs hereby incorporate by reference the allegations contained in all

preceding paragraphs of this complaint.

72.     Plaintiffs bring this claim individually and on behalf of the members of the Class

and Subclass against Defendant.

73.     Plaintiffs and members of the Class and Subclass have an ownership right to the

in-person educational services they were supposed to be provided in exchange for their Spring

Semester 2020 tuition and fee payments to Defendant.

74. Defendant intentionally interfered with the rights of Plaintiffs, the Class, and Subclass when it moved all classes to an online format and discontinued in-person educational services for which tuition and fees were intended to pay.

75. Plaintiffs and members of the Class and Subclass demand the return of the pro-rated portion of any Spring Semester 2020 tuition and fees for education services not provided since Mercy suspended in-person classes on or around March 11, 2020.

76. Defendant's retention of the fees paid by Plaintiffs and members of the Class and Subclass without providing the educational services for which they paid, deprived Plaintiffs, Class and Subclass members of the benefits for which the tuition and fees paid.

77. This interference with the services for which Plaintiffs and members of the Class and Subclass paid damaged Plaintiffs and Class members in that they paid tuition and fees for services that will not be provided.

78. Plaintiffs, Class and Subclass members are entitled to the return of pro-rated portion of any Spring Semester 2020 tuition and fees for education services not provided since Mercy shut down on March 11, 2020.

### COUNT IV
### Money Had And Received
### (On Behalf Of The Class And Subclass)

79. Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

80. Plaintiffs bring this claim individually and on behalf of the members of the Class and Subclass against Defendant.

81. Plaintiffs and members of the Class and Subclass paid monetary funds to Defendant for tuition and fees for the Spring Semester 2020.

82.     Defendant has retained the monies paid by Plaintiffs and members of the Class

and Subclass for the Spring Semester 2020 while not providing in-person educational services,

activities, opportunities, resources, and facilities for which those monies were paid.

83.     Defendant is in possession of and holds money that belongs to Plaintiffs and the

members of the Class and Subclass in equity and good conscience.

84.     Defendant has been unjustly enriched by its retention of the funds Plaintiffs and

the members of the Class and Subclass paid Defendant for tuition and fees, and it is

unconscionable for Defendant to retain funds to which it is not entitled.

85.     Defendant's unlawful retention of Plaintiffs' and Class Members' and Subclass

Members' funds has damaged Plaintiffs and the members of the Class.  Defendant owes

Plaintiffs and members of the Class and Subclass for money had and received, including, but not

limited to, the amount of Plaintiffs' and Class Members' and Subclass Members' pro-rated

tuition and fees for the Spring Semester 2020

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated,

seeks judgment against Defendant, as follows:

(a)     For an order certifying the Class and Subclass under Rule 23 of the
Federal Rules of Civil Procedure and naming Plaintiffs as representatives
of the Class and Subclass and Plaintiffs' attorneys as Class Counsel to
represent the Class and Subclass;

(b)     For an order finding in favor of Plaintiffs and the Class and Subclass on all
counts asserted herein;

(c)     For compensatory and punitive damages in amounts to be determined by
the Court and/or jury;

(d)     For prejudgment interest on all amounts awarded;

(e)     For an order of restitution and all other forms of equitable monetary relief;

(f)     For injunctive relief as pleaded or as the Court may deem proper; and

(g)     For an order awarding Plaintiffs and the Class and Subclass her reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.


Dated: October 27, 2020                    Respectfully submitted,

                                          **BURSOR & FISHER, P.A.**

                                          By:    _/s/ Philip L. Fraietta_____
                                                   Philip L. Fraietta

                                          Philip L. Fraietta
                                          Alec M. Leslie
                                          888 Seventh Avenue
                                          New York, NY 10019
                                          Telephone: (646) 837-7150
                                          Facsimile: (212) 989-9163
                                          Email: pfraietta@bursor.com
                                                   aleslie@bursor.com

                                          **BURSOR & FISHER, P.A.**
                                          Sarah N. Westcot *(pro hac vice* app. forthcoming*)*
                                          2665 S. Bayshore Drive, Suite 220
                                          Miami, FL 33133
                                          Telephone: (305) 330-5512
                                          Facsimile: (305) 676-9006
                                          Email: swestcot @bursor.com

                                          *Attorneys for Plaintiff*